UNITED STATES DISTRICT COURT
for the
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| MARIA BOIANGIN, | **JURY TRIAL DEMANDED** |
| *Plaintiff*, | CASE NO. 1:22cv21174 |
| YAMAHA MOTOR CORPORATION, U.S.A., | |
| *Defendant.* | |

## COMPLAINT

**COMES NOW**, Plaintiff MARIA BOIANGIN ("Plaintiff"), by and through undersigned counsel, hereby sues Defendant YAMAHA MOTOR CORPORATION, U.S.A. ("Yamaha" or "Defendant") and make the following allegations:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is an individual residing in Miami Dade County, Florida, and is otherwise *sui juris*.

2. Defendant is a California corporation with its principal place of business in California. Yamaha sells and distributes its products throughout the United States, including in Florida.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under 15 U.S.C. § 2301. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are related to the federal claims and form part of the same case and controversy, transaction or occurrence.

4. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of

the events or omissions giving rise to the claims occurred and/or emanated from this District and a substantial part of property that is the subject of this action is situated in this District. Specifically, venue is proper in Miami where the at-issue vessel sale occurred.

## GENERAL ALLEGATIONS

5. On or about February 2022, Plaintiff purchased a vessel from a licensed and authorized Yamaha dealer, namely a 2022 YAMAHA BPT1800G-XBG 255XD (the "Vessel"). From inception, the Vessel was problematic and not operating.

6. The Vessel came with a warranty from Yamaha as displayed on its website. The Yamaha website provides that any vessel purchased past 2019 will have a minimum of one year warranty on all parts, with some portions of the vessel being under warranty for as much as five years.

7. During the warranty period, Plaintiff presented the boat for repair to the Yamaha dealer.

8. Defendant failed to conform the Vessel to the provisions of the warranty within a reasonable amount of time or number of repair attempts.

9. Plaintiff seeks to return the Vessel to Yamaha by revoking its acceptance and seeks damages, including a full refund of the purchase price of the Vessel. Alternatively, if the Court determines that revocation is not an appropriate remedy, Plaintiff seeks damages based on the difference in value at the time of purchase between a conforming boat, free of material defect, and the latent, materially defective Electronics sold to them.

10. Yamaha is one of the largest outboard motor manufacturers in the United States in terms of number of sales per year. Over the last five years, Yamaha has sold well over 500,000 outboard motors in the United States.

11. Yamaha is in privity of contract with Plaintiff by and through its agent, Motoport USA, a licensed Yamaha dealer.

12. Yamaha operates facilities in several different states. Prior to the events described herein, Yamaha motors enjoyed a high resale value due to their reputation for quality and reliability.

13. Plaintiff's issues with the Vessel began immediately upon use. Yamaha became aware of multiple complaints regarding the Vessel and it not operating properly. More specifically, the Vessel routinely has electronic malfunctions that render it inoperable above speeds of five (5) to fifteen (15) knots. After Yamaha agent's final attempts to repair the Vessel and/or honor the warranty, the Vessel is completely inoperable and immobile. The value of the Vessel to Plaintiff is $0.00. Vessel's re-sale value is next to or at $0.00.

## COUNT I
### Violation of Magnuson-Moss Warranty Act 15 U.S.C. 2301 et seq.

14. Plaintiff incorporates by reference and reallege all previous paragraphs above namely 1–13.

15. Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(c).

16. Yamaha is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

17. The defective Yamaha motors at issue are "consumer products" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(1).

18. Yamaha's express warranties are written warranties within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(6).

19. Yamaha expressly warranted that the Vessel would be "free from defects in material and workmanship" for the entire warranty period.

20. In addition, Yamaha made affirmations of fact or promises that the boats it manufactured would be fully operational, safe, and reliable. These warranties were made, inter alia, in advertisements, in Yamaha's "e-brochures," and in uniform statements provided by Yamaha to be made by salespeople. These affirmations and promises were express warranties and were part of the basis of the bargain between the parties.

21. Yamaha breached its express warranties by selling Plaintiff a Vessel that from the moment of sale was not "free from defects in material and workmanship" because the motors had material defects and were not fully operational, safe, or reliable.

22. Yamaha further breached by failing to provide safe replacement parts after the problems were acknowledged or providing a commercially reasonable repair.

23. The amount in controversy of Plaintiff' individual claims meets or exceeds the sum of $25.

24. Plaintiff has been damaged by Yamaha's breach of warranty.

25. Plaintiff provided Yamaha with notice of its claims on behalf of themselves on multiple occasions through communications with Yamaha's agent. Specific notice was given on various dates including but not limited to April 13, 2022 when Yamaha's agent printed a receipt noting attempted repairs (that did not resolve Plaintiff's issues).

26. Plaintiff seeks to revoke acceptance of the Vessel or, in the alternative, seeks to recover the diminution in value of its Vessel.

27. Requiring an informal dispute settlement procedure, or affording Yamaha another reasonable opportunity to cure its breach of written warranties, would be unnecessary and futile. At the time of sale of the boat, Yamaha knew, should have known, or was reckless in not knowing of its misrepresentations concerning the boat's inability to perform as warranted, but nonetheless failed

to rectify the situation and/or fully and properly disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement – whether under the Magnuson-Moss Warranty Act or otherwise – that Plaintiff resort to an informal dispute resolution procedure and/or afford Yamaha further reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

## COUNT II
### Breach of Express Warranty under Fla. Stat. § 672.313

28. Plaintiff incorporates by reference and realleges paragraphs 1–13.

29. Yamaha is and was at all relevant times a merchant as defined by the Uniform Commercial Code ("UCC").

30. Yamaha expressly warranted that the boat would be "free from defects in material and workmanship" for the entire warranty period.

31. The Yamaha warranty gave an express written warranty that covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Yamaha, subject to the exceptions indicated under "What Is Not Covered," none of which is relevant here.

32. Standard Warranty coverage is for three (3) years from date of purchase. In addition, Yamaha made affirmations of fact or promises that the motors it manufactured would be fully operational, safe, and reliable. These warranties were made, inter alia, in advertisements, in Yamaha's "e-brochures," and in uniform statements provided by Yamaha to be made by salespeople. These affirmations and promises were express warranties, and were part of the basis of the bargain between the parties.

33. Yamaha breached its express warranties by selling Plaintiff a Vessel that was from the moment of sale were not "free from defects in material and workmanship" and was not fully operational, safe, or reliable on delivery.

5

34. Yamaha further breached by failing to provide safe replacement parts free of material defect after the problems were acknowledged.

35. Yamaha also breached the warranty by failing to repair the Vessel in a commercially reasonable manner.

36. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff has been damaged by receiving non-conforming parts that were worth far less than conforming parts and what she paid for them, and Plaintiff received goods whose dangerous condition substantially impairs their value to Plaintiff.

37. Plaintiff was unaware of the latent material defects and could not have reasonably discovered them when she purchased her Vessel.

38. Plaintiff seeks to revoke her acceptance of the Vessel, return her Vessel, and receive a full refund for the purchase price. Alternatively, Plaintiff seeks the difference in value between a conforming boat, free of material defect, and the non-conforming Vessel she purchased.

39. Yamaha had actual and/or constructive notice of the defect.

40. In addition, the express warranty has failed of its essential purpose and, therefore, all remedies available under the U.C.C. are available to the Plaintiff. Plaintiff seeks any incidental and consequential damages, including the costs associated with replacing the defective and non-conforming parts by purchasing conforming parts, and all other damages allowable under law.

## COUNT III
### Breach of the Implied Warranty of Merchantability Fla. Stat. 672.314

41. Plaintiff incorporates by reference and reallege paragraphs 1–13.

42. The Vessel Yamaha provided to Plaintiff violated Yamaha's implied warranty of merchantability.

43. Because of the acknowledged defect, the Vessel is not merchantable and not fit for

its ordinary purpose.

44. Yamaha has asserted as an affirmative defense that it disclaimed the implied warranty of merchantability. However, Yamaha's disclaimer is ineffective because it was not given until after consummation of the sale and even then it was not given conspicuously. Only after Plaintiff agreed to purchase its motors and signed a sale agreement did Yamaha attempt to disclaim warranties. The disclaimer appeared in two post-sale documents. One was buried in the middle of an owner's manual that is over 100 pages long while the other was buried in a stack of documents provided by the dealer after the sale. The disclaimer was further obscured because it was placed under a bold, all-caps, but highly misleading heading, TRANSFER OF WARRANTY, even though the disclaimer has nothing to do with warranty transfers.

45. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff received goods whose latent defect substantially impairs their value to Plaintiff. Plaintiff has been damaged as a result of the diminished value of the Defendant's products, the products malfunctioning, and the loss of use and enjoyment of her Vessel.

46. Plaintiff was unaware of these defects and reasonably could not have discovered them when she purchased her Yamaha motors.

47. Plaintiff seeks to return her Vessel and to receive a full refund for the purchase price. Yamaha had actual notice of the defect.

48. Alternatively, Plaintiff seek damages based on the diminished value of her motors and Vessel as a result of these latent and material defects.

49. In addition, Plaintiff seeks any incidental and consequential damages, including the costs associated with purchasing conforming motors, and all other damages allowable under law.

## COUNT IV
### Unjust Enrichment (*In the Alternative*)

50. Plaintiff incorporates by reference and realleges paragraphs 1–13.

51. Plaintiff pleads this count in the alternative should Plaintiff's statutory claims fail or be dismissed.

52. Yamaha had knowledge of the safety defect of the motors at issue but failed to disclose the design defect to Plaintiff either at the time of purchase or anytime thereafter.

53. Yamaha appreciated, accepted and retained the non-gratuitous benefits conferred by Plaintiff despite Defendant's knowledge of the defects.

54. Retaining the non-gratuitous benefits conferred upon Yamaha by Plaintiff under these circumstances is unjust and inequitable, and Yamaha should pay restitution.

## COUNT V
### Violation of Florida Deceptive and Unfair Trade Practices Act (§§ 501.201, et seq.)

55. Plaintiff incorporates by reference and realleges paragraphs 1–13.

56. Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1) (2022).

57. Yamaha failed to fully and properly disclose material information concerning the defective motors, which was known to Yamaha at the time of sale. Yamaha deliberately withheld the information about the motors' propensity for rapid and premature failure in order to ensure that consumers would purchase its motors and to induce consumers to enter into a transaction. problem, but simply notifies purchasers it is time to, yet again, bring their motors in for service, as a result of the defective condition.

58. Yamaha's practice of omitting information about the propensity of its motors for

rapid and premature failure was likely to deceive a consumer acting reasonably.

59. The defective nature of the subject motors was material to Plaintiff.

60. Had Plaintiff known that her Yamaha motors had this problem, she would not have purchased her Yamaha motors.

61. Yamaha's omissions and shortcomings in providing an adequate remedy were in the course of its business.

62. Plaintiff was injured by Yamaha's failure to disclose material information in that Plaintiff overpaid for her motors and did not receive the benefit of their bargain, and their motors, as well as her boats, have suffered a diminution in value.

63. These injuries are the direct and natural consequence of Yamaha's misrepresentations and omissions. The value of her Yamaha motors and their boats, has diminished now that the safety issue and ownership burdens have come to light, and Plaintiff own motors that are not safe.

64. As a direct and proximate result of the unsafe and defective motors, Plaintiff's boat is unsafe and unseaworthy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment against Yamaha as follows:

a. Judgment ruling that Plaintiff has properly revoked acceptance of the Yamaha motors at issue and is entitled to a full refund and/or damages based on the difference in value between the non-conforming motors and conforming motors;

b. Judgment awarding consequential damages to the Plaintiff, including the diminution in value of its motors and boats;

  c. Judgment awarding Plaintiff incidental and consequential damages, including the costs associated with removing the defective motors, purchasing conforming replacement motors and all other damages allowable under law;

  d. Judgment declaring, adjudging, and decreeing the conduct of the Defendants as alleged herein to be unlawful, unfair and/or deceptive, and enjoin any such future conduct;

  e. Judgment awarding Plaintiff all costs of this action, including attorney fees and costs, pre-judgment and post-judgment interest; and

  f. For an order granting any such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demand a trial by jury for all claims so triable.

Dated: April 15, 2022      Respectfully submitted,

**AINSWORTH + CLANCY, PLLC**
801 Brickell Avenue, 8th Floor
Miami, FL 33131
Telephone: (305) 600-3816
Facsimile: (305) 600-3817
*Counsel for Plaintiff*

By: s/ Ryan Clancy
Ryan Clancy, Esq.
Email: ryan@business-esq.com
Email: info@business-esq.com