**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

MARIA BOIANGIN ,

*Plaintiff*,

YAMAHA MOTOR CORPORATION, U.S.A.,

*Defendant*.

CASE NO. 1:22cv21174

**AMENDED COMPLAINT AND JURY TRIAL DEMAND**

**COMES NOW**, Plaintiff Maria Boiangin (the "Plaintiff") and files this Amended Complaint against Defendant Yamaha Motor Corporation, U.S.A. ("Yamaha" or "Defendant") and makes the following allegations:

**JURISDICTION AND VENUE**

1. Plaintiff is an individual, is a citizen of Florida, and resides in Miami-Dade County, Florida.
2. The Defendant is a California corporation with its principal place of business in a state other than Florida. Yamaha sells and distributes its products throughout the United States, including in Florida.
3. This Court has subject matter jurisdiction by virtue of a federal question, 28 U.S.C. § 1331, because this complaint makes a federal statutory claim. This Court has personal jurisdiction over Yamaha because it conducts substantial business in the Southern District of Florida and the cause of action arises out of sales of Yamaha motors in the state of Florida. This Court also has jurisdiction based on diversity in that damages are in excess of $75,000 and the Parties are completely diverse.
4. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because a substantial part of property that is the subject of this action is situated in this District. Specifically, venue is proper in Miami where the at-issue vessel sale occurred.

5. The Court has ancillary jurisdiction over Plaintiff's State Law claims pursuant to 28 U.S.C. §1367 because the actions arise from the same transaction and occurrence.

**FACTUAL ALLEGATIONS**

6. Plaintiff, on or about February 2022, purchased a vessel from a licensed and authorized Yamaha dealer, namely a 2022 YAMAHA BPT1800G-XBG 255XD (the "Vessel").
7. The Vessel came with a warranty from Yamaha as displayed on their website. Specifically, the Yamaha website provides that any vessel purchased past 2019 will have a minimum of one year warranty on all parts, with some portions of the vessel being under warranty for as much as five years.
8. During the warranty period, Plaintiff presented the Vessel for repair to the Yamaha dealer.
9. Defendant failed to conform the product to the provisions of the warranty within a reasonable amount of time or number of repair attempts.
10. Plaintiff seeks to return the Vessel to Yamaha by revoking their acceptance and seeks damages, including a full refund of the purchase price. Alternatively, if the Court determines that revocation is not an appropriate remedy, Plaintiff seek damages.
11. Yamaha is one of the largest outboard motor manufacturers in the United States in terms of number of sales per year. Over the last five years, Yamaha has sold well over 500,000 outboard motors in the United States.
12. Yamaha is in privity of contract with Plaintiff by and through its agent, Motoport USA, a licensed Yamaha dealer.
13. Yamaha has created an appearance of an agency relationship by listing Motoport USA as a licensed Yamaha dealer on its website and providing a warranty from those customers whom purchase a new Yamaha Sport Boats from an authorized Yamaha Sport Boat dealer in the continental United States.
14. Yamaha operates facilities in several different states. Prior to the events described herein, Yamaha motors enjoyed a high resale value due to their reputation for quality and reliability.
15. Yamaha became aware of multiple complaints regarding the Vessel and it not operating properly. More specifically for some reason despite having less than twenty (20) hours of operations the Vessel routinely has electronic malfunctions that render it inoperable above speeds of 5-15 knots.

**COUNT I**
**Violation of Magnuson-Moss Express Warranty Act 15 U.S.C. 2301 et seq.**

16. Plaintiff incorporates by reference and reallege all previous paragraphs above namely 1-15.
17. Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(c).
18. Yamaha is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).
19. The defective Yamaha motors at issue are "consumer products" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(1).
20. Yamaha's express warranties are written warranties within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(6).
21. Yamaha expressly warranted that the boat would be "free from defects in material and workmanship" for the entire warranty period.
22. In addition, Yamaha made affirmations of fact or promises that the boats it manufactured would be fully operational, safe, and reliable. These warranties were made, inter alia, in advertisements, in Yamaha's "e-brochures," and in uniform statements provided by Yamaha to be made by salespeople. These affirmations and promises were express warranties and were part of the basis of the bargain between the parties.
23. Yamaha breached its express warranties by selling Plaintiff a boat that from the moment of sale was not "free from defects in material and workmanship" because the motor at issue had material defects and was not fully operational, safe, or reliable.
24. Yamaha further breached by failing to provide safe replacement parts after the problems were acknowledged or providing a commercially reasonable repair.
25. The amount in controversy of Plaintiff' individual claims meets or exceeds the sum of $25.
26. Plaintiff has been damaged by Yamaha's breach of warranty.
27. Plaintiff provided Yamaha with notice of their claims on behalf of themselves on multiple occasions through communications with Yamaha's agent. Specific notice was given on various dates including but not limited to April 13, 2022 when Yamaha's agent printed a receipt noting attempted repairs (that did not resolve Plaintiff's issues).
28. Yamaha did not remedy the defects in a reasonable time and in fact did not remedy the defects until after Plaintiff was forced to engage the undersigned attorneys, causing Plaintiff to incur

unnecessary attorney's fees and to file the instant lawsuit and burden this Court with more litigation in an extremely busy judicial venue.

29. Plaintiff seeks to revoke acceptance of the Yamaha boat and incidental damages.

30. Requiring an informal dispute settlement procedure, or affording Yamaha another reasonable opportunity to cure its breach of written warranties, would be unnecessary and futile. At the time of sale of the boat, Yamaha knew, should have known, or was reckless in not knowing of its misrepresentations concerning the boat's inability to perform as warranted, but nonetheless failed to rectify the situation and/or fully and properly disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement – whether under the Magnuson-Moss Warranty Act or otherwise – that Plaintiff resort to an informal dispute resolution procedure and/or afford Yamaha further reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

31. It would be inequitable to allow Yamaha to not accept Plaintiff's recission and cover attorney's fees as Yamaha instigated the instant litigation through its repeated failures to take responsibility as promised under a written warranty. Only after Plaintiff had incurred substantial attorney's fees *pre-suit* and post-filing did Yamaha take Plaintiff's claims seriously.

**COUNT II**
**Breach of Implied Warranty**

32. Plaintiff incorporates by reference and realleges paragraphs 1-15.

33. Plaintiff purchased the Vessel from Yamaha through its agent and licensed and authorized dealership.

34. Plaintiff has contractual privity with Yamaha, via its contract with its agent.

35. Yamaha provides an express limited warranty which covers the Vessel.

36. Under *15 U.S.C.A. § 2308,* no supplier may disclaim or modify… any implied warranty to a consumer with respect to such consumer product if such supplier makes any written warranty to the consumer with respect to such consumer product.

37. Thus, the implied warranty of merchantability applies.

38. Plaintiff was a foreseeable user of the Vessel.

39. Plaintiff was using the Vessel in the intended manner at the time of the injury.

40. The Vessel was defective when transferred from Yamaha.

41. The defect caused the Plaintiff's injury.

**COUNT III**
**Breach of Express Warranty Fla. Stat. 672.313**

42. Plaintiff incorporates by reference and realleges paragraphs 1-15.
43. Yamaha is and was at all relevant times a merchant as defined by the Uniform Commercial Code ("UCC").
44. Yamaha expressly warranted that the boat would be "free from defects in material and workmanship" for the entire warranty period.
45. The Yamaha warranty gave an express written warranty that covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Yamaha, subject to the exceptions indicated under "What Is Not Covered," none of which is relevant here.
46. Standard Warranty coverage is for three (3) years from date of purchase. In addition, Yamaha made affirmations of fact or promises that the motors it manufactured would be fully operational, safe, and reliable. These warranties were made, inter alia, in advertisements, in Yamaha's "e-brochures," and in uniform statements provided by Yamaha to be made by salespeople. These affirmations and promises were express warranties and were part of the basis of the bargain between the parties. Put another way Plaintiff relied on the affirmations, promises and warranties and chose to spend Plaintiff's money with Yamaha, rather than any of its very respectable competitors.
47. Yamaha breached its express warranties by selling Plaintiff a boat that was from the moment of sale not "free from defects in material and workmanship" and not fully operational, safe, nor reliable on delivery.
48. Yamaha further breached by failing to provide safe replacement parts free of material defect after the problems were acknowledged and by failing to even communicate substantively with the Plaintiff without an attorney retained.
49. Yamaha also breached the warranty by failing to repair the boat in a commercially reasonable manner.
50. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff has been damaged by receiving non-conforming parts that were worth far less than conforming parts and

what they paid for them, and Plaintiff received goods whose dangerous condition substantially impairs their value to Plaintiff.

51. Plaintiff was unaware of the latent material defects and could not have reasonably discovered them when Plaintiff purchased the Vessel.
52. Plaintiff seeks to revoke her acceptance of the Vessel, return the Vessel, and receive a full refund for the purchase price. Alternatively, Plaintiff seek the difference in value between a conforming boat, free of material defect, and the non-conforming Vessel they purchased.
53. Yamaha had actual and/or constructive notice of the defect.
54. In addition, the express warranty has failed of its essential purpose and, therefore, all remedies available under the U.C.C. are available to Plaintiff. Fla. Stat. 672.719(2).
55. As such, Plaintiff seeks any incidental and consequential damages, including the costs associated with replacing the defective and non-conforming parts by purchasing conforming parts, and all other damages allowable under law.

**COUNT IV**
**Breach of the Implied Warranty of Merchantability Fla. Stat. 672.314**

56. Plaintiff incorporates by reference and reallege paragraphs 1-15.
57. The Vessel provided to Plaintiff violated Yamaha's implied warranty of merchantability.
58. Because of the acknowledged defect, they are not merchantable and not fit for ordinary purposes.
59. Yamaha has asserted or will likely assert as an affirmative defense that it disclaimed the implied warranty of merchantability. However, Yamaha's disclaimer is ineffective because it was not given until after consummation of the sale and even then it was not given conspicuously. Only after Plaintiff agreed to purchase their motors and signed a sale agreement did Yamaha attempt to disclaim warranties. The disclaimer appeared in two post-sale documents. One was buried in the middle of an owner's manual that is over 100 pages long. The other was buried in a stack of documents provided by the dealer after the sale. The disclaimer was further obscured because it was placed under a bold, all-caps, but highly misleading heading, TRANSFER OF WARRANTY, even though the disclaimer has nothing to do with warranty transfers.
60. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff received goods whose latent defect substantially impairs their value to Plaintiff. As well, Plaintiff has been damaged as a result of the diminished value of the

Defendant's products, the products malfunctioning, and the loss of use and enjoyment of their boats.

61. Plaintiff was unaware of these defects and reasonably could not have discovered them when Plaintiff purchased the Vessel.
62. Yamaha had actual notice of the defect.
63. Plaintiff seeks to return the Vessel and to receive a full refund for the purchase price.
64. Alternatively, Plaintiff seek damages based on the diminished value of their motors and boats as a result of these latent and material defects.
65. In addition, Plaintiff seeks any incidental and consequential damages, including the costs associated with purchasing conforming motors, and all other damages allowable under law.

**COUNT V**
**In the Alternative, Unjust Enrichment**

66. Plaintiff incorporates by reference and realleges paragraphs 1-15.
67. Plaintiff plead this count in the alternative should Plaintiff' statutory claims fail or be dismissed.
68. Yamaha had knowledge of the safety defect of the motors at issue but failed to disclose the design defect to Plaintiff either at the time of purchase or anytime thereafter.
69. Yamaha appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff despite Defendant's knowledge of the defects.
70. Retaining the non-gratuitous benefits conferred upon Yamaha by Plaintiff under these circumstances is unjust and inequitable, and Yamaha should pay restitution.

**COUNT VI**
**Violation of Florida Deceptive and Unfair Trade Practices Act (§§ 501.201, et seq.)**

71. Plaintiff incorporates by reference and realleges paragraphs 1-15.
72. Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).
73. Yamaha failed to fully and properly disclose material information concerning the defective motors, which was known to Yamaha at the time of sale. Yamaha deliberately withheld the information about the motors' propensity for rapid and premature failure in order to ensure that consumers would purchase its motors and to induce consumers to enter into a transaction. When

notified about the problem, Yamaha simply notifies purchasers it is time to, yet again, bring their motors in for service, as a result of the defective condition but Yamaha rarely if ever actually fixes the vessels. In the interim the customer, including Plaintiff has no vessel despite paying hundreds of thousands to purchase one and also paying thousands to dock, insure and take care of the vessel (which is essentially a glorified paperweight).

74. Yamaha's practice of omitting information about the propensity of its motors for rapid and premature failure was likely to deceive a consumer acting reasonably.
75. The defective nature of the subject motors was material to Plaintiff.
76. Had Plaintiff known that Yamaha motors had this problem, they would not have purchased the Vessel.
77. Yamaha's omissions and shortcomings in providing an adequate remedy were in the course of its business.
78. Plaintiff was injured by Yamaha's failure to disclose material information in that Plaintiff overpaid for the Vessel and did not receive the benefit of their bargain, and their motors, as well as their boats, have suffered a diminution in value.
79. In addition, as described above, Yamaha's entire warranty sales practice is one grounded in deception. Yamaha disclaims implied warranties after sales are consummated, and makes its own warranties so bare bones and limited that is effectively useless. So much so that one must resort to the "essential purpose" doctrine of the UCC just to ensure full benefit of the bargain that any reasonable consumer would expect.
80. Plaintiff is not alone in alleging that Yamaha's warranty practices are deliberate and misleading to the contrary the internet is littered with stories:
    a. A Better Business Bureau report from November 11, 2021 notes "My husband and I purchased a 2022 Yamaha RMAX 4 XTR for $26,000 on 11/6/2021 from ******************* in *******, **. After getting the unit home we noticed the transmission making a rather loud knocking sound. On Monday 11/8/2021 we called Yamaha Motors corporate office to see if they could offer assistance. The customer service rep confirmed the knocking is a "known problem" and a "normal characteristic of the machine", she said they were not interested in pursuing a solution. On Tuesday 11/9/2021 the dealership picked the machine up to see if they could figure it out. Today 11/11/2021 the dealership called to tell us that the noise is "very unusual, not normal, and that a matching unit from their inventory does not exhibit the same knocking noise". They informed us that Yamaha would not allow them to replace the faulty transmission because they don't think it will fail. The dealership is just as confused and frustrated as we are. At this point we cannot drive or enjoy the machine because of the loud noise.

We cannot use the machine as intended for fear of getting stranded in the middle of the forest with our two young children. We were sold a Lemon and Yamaha is not willing to make it right. If this was a normal characteristic of the machine all RMAXs would have the knock but they do not. We know two other people with the same machine and theirs does not have a knocking transmission. My husband and I are long time Yamaha customers with a fleet of Yamaha products old and new (x2 rhinos, grizzly, kodiak, raptor, and boat) so this is very disheartening. I want the quality Yamaha product that I paid for."

b. Yamaha responds back that in their opinion there is no problem but they will offer the customer *another* different warranty the so called "YES" warranty. An entire section of the internet is dedicated to the follies of the YES Warranty and offering customers such warranties rather than honoring the actual warranty the customer already purchased with their vehicle seems to be a recurring business practice.

c. This very year in January a customer wrote on the same website: Per my conversation with the owner of Middletown Cycle the bike was Defective! He told me that himself. They never sent the engine to Yamaha per Yamahas request therefore Yamaha cannot say it was not defective when the dealer confirmed it was. We took it to another dealer due to the fact the dealer we purchased from refused to refund our money or repair it in a timely mannered or at all. They were extremely obnoxious to deal with and told one lie after another. I have voicemails to prove it. We have been more than patient for 8 months with no compensation of non use of a DEFECTIVE bike not to mention the money loss going to a Pro race and having the defective bike blow up first moto. If you read the lemon law this bike definitely applies to the aspects of that law! Not to mention we have never spoken to **************************** therefore her knowledge of this matter is limited to what she has read in notes and I know for a fact their is improper documentation due to the facts about this matter. Yamaha said they do not document everything unless they ask for the serial number of the bike & they have not done that. Bottom line I do not want a bike over a year old that I bought new and have never been able to use. At this point the only resolution is to refund all of my money. I will not settle for lies nor Covid excuses as I know the parts were available a long time ago. We have given the dealer and Yamaha more than enough time to resolve this matter and continue to hear only lies and excuses. The only resolution to this matter is Refund my money so I can purchase a competitive bike that is new and not old that will no longer compete with the 2022-2023 bikes. The bike was defective from day one per the dealer and should have been handled properly at that time instead of me getting the run around for 8 months. I am making payments on a junk bike!

d. Yamaha used their response space to blame the dealer (who seemed to be nothing but assisting to the complaining customer). Although Yamaha will attempt to argue it has no privity with the Plaintiff in this case, interestingly in response to that Complaint, Yamaha noted "We rely on our dealer network to act as our eyes and ears in the field, and to repair vehicles in accordance with our limited factory warranty."

81. Plaintiff has incurred attorneys' fees, expense, and other direct damages attributable to the games that Yamaha plays with its warranties as well as their failures to provide proper functioning equipment as set out above.
82. These injuries are the direct and natural consequence of Yamaha's misrepresentations and omissions. As a result of the actions or inactions of Yamaha, Plaintiff own motors that are not safe.
83. As a direct and proximate result of the unsafe and defective motors, Plaintiff's Vessel is unsafe and unseaworthy.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment against Yamaha as follows:

1) Judgment ruling that Plaintiff has properly revoked acceptance of the Yamaha motors at issue and are entitled to a full refund and/or damages based on the difference in value between the non-conforming motors and conforming motors;
2) Judgment awarding consequential damages to the Plaintiff, including the diminution in value of their motors and boats;
3) Judgment awarding Plaintiff incidental and consequential damages, including the costs associated with removing the defective motors, purchasing conforming replacement motors and all other damages allowable under law;
4) Judgment declaring, adjudging, and decreeing the conduct of the Defendants as alleged herein to be unlawful, unfair and/or deceptive, and enjoin any such future conduct;
5) Judgment awarding Plaintiff all costs of this action, including attorney fees and costs, pre-judgment and post-judgment interest; and
6) Judgment for all damages under the Florida UCC as allowable including but not limited to Fla. Stat. 672.711 through 672.716
7) For an order granting any such other relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demand a trial by jury for all claims so triable.

Respectfully submitted,

**AINSWORTH + CLANCY, PLLC**
801 Brickell Avenue, 8th Floor
Miami, FL 33131
Telephone: (305) 600-3816
Facsimile: (305) 600-3817
*Counsel for Plaintiff*

By: s/ Ryan Clancy
Ryan Clancy, Esq.
Email: ryan@business-esq.com
Email: info@business-esq.com