**UNITED STATES DISTRICT COURT**
**for the**
**SOUTHERN DISTRICT OF FLORIDA**

|  |  |  |
|---|---|---|
| MARIA BOIANGIN , | ) | |
| | ) | |
| *Plaintiff,* | ) | CASE NO. 1:22cv21174-Gayles |
| | ) | |
| | ) | |
| | ) | |
| YAMAHA MOTOR | ) | |
| CORPORATION, U.S.A., | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**MOTION FOR SUMMARY JUDGMENT**

Defendant, Yamaha Motor Corporation, U.S.A. ("Yamaha"), moves for summary judgment on Plaintiff's Amended Complaint (Doc. 25) pursuant to Fed. R. Civ. P. 56, on grounds that Plaintiff cannot support her claims and that Plaintiff has no available remedies, and says:

1.      Plaintiff filed her original Complaint in this matter on April 15, 2022 (Doc. 1), due to purported issues with a Yamaha vessel that Plaintiff purchased in February 2022 (Doc. 1, p. 1).

2.      The Yamaha vessel that Plaintiff purchased came with a Yamaha Limited Warranty (hereinafter, the "Limited Warranty") that was readily available for review at the Yamaha dealer as well as online.  Statement of Material Facts ("SMF"), ¶¶ 4-8.

3.      Yamaha effected repairs in accordance with its Limited Warranty.  SMF, ¶¶ 9, 13-29.  While Yamaha's dealer did initially run into problems troubleshooting the vessel and locating an available part resulting in delay, Yamaha escalated the matter to its District Service Manager

1

("DSM") on or around April 22, 2022, in an effort to accelerate repairs.[1]   SMF, ¶¶ 16-21.  The matter was escalated to the DSM in the ordinary course of business.  SMF, ¶ 22-24.

4.     On May 3, the DSM was able to go onsite and repaired the vessel. SMF, ¶ 25-26. Upon inspection, it was determined there was a loose wiring harness connection on the vessel in that one of the pins in the male boat connector was not fully seated, which was causing the error messages and accompanying performance issues complained of by Plaintiff.  SMF, 25-26.

5.     Plaintiff filed her Amended Complaint on July 27, 2022. Plaintiff's Amended Complaint asserts causes of action for breach of an express warranty (Counts I and III), breach of an implied warranty of merchantability (Counts II and IV), unjust enrichment (Count V), and a violation of the Florida Deceptive and Unfair Trade Practices Act (Count VI).  *See* SMF, ¶ 29.

6.     However, Plaintiff's Amended Complaint also acknowledges that Yamaha did remedy the purported defect.  SMF, ¶ 29.  Plaintiff now complains about the time that it took Yamaha to correct the issue. Doc. 25, p. 3, ¶ 28.

7.     Regardless of the inconvenience to Plaintiff, she has received *everything* she is entitled to under the Limited Warranty, her vessel fully conforms to the Limited Warranty, and this matter should be dismissed as moot.

8.     Instead, Plaintiff elects to pursue causes of action that are unavailable and based on claims regarding the vessel's motor that are without any factual basis.  Plaintiff cannot proceed under *any* of the causes of action alleged, and her authorized repair remedy has already been fully performed by Yamaha.  The only alternative remedy available under the Limited Warranty is to replace the vessel, which remedy is unnecessary and unavailable for a vessel that is functioning as

---

[1] While the Complaint had been filed by this time, and Yamaha's agent for service of process had been served, Yamaha was not aware of the complaint yet as its agent had not notified it of the service.  SMF, 3.

65647636;1

it should be.  This matter is properly considered resolved.

9.      No amount of discovery will change the fact that the vessel has been repaired, that the Limited Warranty imposed valid limitations, or that there are no additional remedies available to Plaintiff, and early summary judgment is appropriate to avoid unnecessary litigation costs and to conserve party and judicial resources.

10.     Based on Yamaha's Statement of Material Facts, filed in conjunction with this motion and incorporated herein by reference, and its Memorandum in Support of Summary Judgment, Yamaha is entitled to judgment as a matter of law on all counts.

WHEREFORE, Defendant, Yamaha Motor Corporation U.S.A. requests this Court enter an Order granting Yamaha summary judgment on all counts, and awarding Yamaha its reasonable fees and costs, and any other relief deemed just, equitable, and proper.

## MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT

**Applicable Standards.**  Summary judgment is appropriate where "there is no genuine dispute as to any material fact" Fed. R. Civ. P. 56(a). "To overcome a motion for summary judgment, the nonmoving party must present more than a scintilla of evidence supporting [their] position – rather, 'there must be enough of a showing that the jury could reasonably find for that party.'" *Siddiqui v. NetJets Aviation, Inc.*, 773 F. App'x 562, 563 (11th Cir. 2019) (quoting *Brooks v. County Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1162 (11th Cir. 2006). "Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted."  *Savanna Club Worship Serv., Inc. v. Savanna Club Homeowners' Ass'n, Inc.*, 456 F. Supp. 2d 1223, 1224 (S.D. Fla. 2005).

65647636;1

## I.        Plaintiff Cannot Demonstrate a Breach of a Written Warranty.

In Count I of her Amended Complaint, Plaintiff asserts a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. 2301 et seq. (hereinafter "Magnuson-Moss"), alleging that Yamaha did not provide a vehicle "free from defects in material and workmanship because the motor at issue had material defects and was not fully operational, safe, or reliable," failed to provide safe replacement parts and provide a commercially reasonable repair, and failed to remedy the defects in a reasonable amount of time.  *See* Doc. 25 p. 3 (internal quotations omitted).   Plaintiff also asserts a breach of an express warranty in Count III of her Amended Complaint based on the same grounds[2].  *See* Doc. 25, p. 5.  The purported defect was a loose wiring harness connection where one of the pins in the male boat connector was not fully seated, which was causing error messages and accompanying performance issues as opposed to any defects in the vessel's motor as asserted by Plaintiff. Regardless, Plaintiff acknowledges that the vessel has been repaired in her Amended Complaint.  Doc. 25, p. 3, ¶ 28.  There is thus no dispute that Yamaha corrected any non-conformity in the vessel and delivered it to Plaintiff on or around May 6, 2022, or that Plaintiff has

---

[2] While Plaintiff contends that other warranties were made by its dealer, Motoport, Motoport is not Yamaha's agent (as discussed in Section III below), and the Limited Warranty disclaims any statements made outside the Limited Warranty as warranties:

> **THIS DOCUMENT CONTAINS THE ENTIRE WARRANTY GIVEN BY YAMAHA AND THERE ARE NO TERMS, PROMISES, CONDITIONS OR WARRANTIES OTHER THAN THOSE CONTAINED HEREIN. NO ORAL OR WRITTEN INFORMATION OR ADVANCE GIVEN BY YAMAHA, ITS DEALERS, REPRESENTATIVES, AGENTS OR EMPLOYEES SHALL CREATE A WARRANTY BY YAMAHA OR IN ANY WAY INCREASE THE SCOPE OF THIS WARRANTY.**

SMF, ¶¶ 2-3, 11 .

65647636;1

had a fully-functioning and conforming vessel in her possession prior to the time that Yamaha was required to file its Answer in this case.

Magnuson-Moss "gives consumers a private right of action against warrantors for a breach of warranty, as defined by state law." *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1304 (S.D. Fla. 2017). "To state a claim under the Magnuson-Moss Warranty Act, though, a plaintiff must also state a valid breach of warranty claim." *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1110–11 (S.D. Fla. 2019). "[T]he question whether a warrantor has committed a breach of a limited express warranty under the [Magnuson-Moss] Act is governed by state law." *Melton*, 243 F. Supp. 3d at 1304, citing *Ocana v. Ford Motor Co.,* 992 So. 2d 319, 323 (Fla. Dist. Ct. App. 2008). There is no material distinction between Counts I and III of the Amended Complaint for summary judgment purposes, as both depend on a breach of warranty under state law.

"Under Florida law, a written warranty is treated like a contract between the seller and the buyer." *Aprigliano v. Am. Honda Motor Co., Inc.,* 979 F. Supp. 2d 1331, 1339–40 (S.D. Fla. 2013). "To succeed on a breach of express warranty claim under Florida law, Plaintiffs must show: (1) a covered defect existed in the product at the time of sale; (2) notice of the defect was given within a reasonable time after the defect was discovered; and (3) Defendant was unable to repair the defect." *McLaughlin v. Monaco RV LLC*, 2015 WL 5355465, at \*3 (M.D. Fla. Sept. 14, 2015) (internal quotations omitted); *see also Smith v. Forest River, Inc.*, 2020 WL 2105073, at \*11–12 (S.D. Fla. Apr. 16, 2020), report and recommendation adopted, 2020 WL 2099435 (S.D. Fla. May 1, 2020). Here, Plaintiff cannot show that Defendant was unable to repair the defect, because the defect has in fact been repaired and therefore cannot demonstrate a breach. Plaintiff likewise cannot show cognizable damages for an alleged breach, which will be discussed in detail in Section III below. Accordingly, Yamaha is entitled to summary judgment on Counts I and III.

65647636;1

**II.     Plaintiff Cannot Demonstrate a Breach of the Implied Warranty of Merchantability or show the Privity Requirement Under the Uniform Commercial Code is Met.**

Plaintiff asserts as Counts II and IV two materially indistinguishable causes of action, each alleging a breach of an implied warranty of merchantability.  *See* Doc. 25, pp. 2 – 4, Counts II and IV (both seeking to recover on a purported breach of the implied warranty of merchantability). First, Plaintiff cannot show any implied warranty was breached as the vessel has been wholly repaired.  In *Smith*, 2020 WL 2105073, at \*9, the Plaintiff alleged that the implied warranty of merchantability was breached with respect to an RV that had been repaired.  The court in *Smith* granted summary judgment on grounds that there was no evidence that the repaired RV was not fit for ordinary purpose, amongst other reasons.  *Id.*  Like the RV in *Smith*, Plaintiff's vessel is functioning as it should be and cannot be said to be unfit for ordinary purpose as there are no defects present.  Accordingly, Yamaha is also entitled to summary judgment on Counts II and IV.

Additionally, under Florida law, privity of contract is required to support a claim for breach of an implied warranty.  *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 326 (Fla. 3d DCA 2008). There is no privity between Plaintiff and Yamaha, as Plaintiff purchased the vehicle from Motoport U.S.A. ("Motoport").  While Plaintiff alleges a pure legal conclusion that Motoport was Yamaha's agent, Motoport U.S.A. is not Yamaha's agent, and Plaintiff has no evidence that it is.  Plaintiff's allegation that by listing Motoport U.S.A. as a Yamaha dealer, Yamaha rendered Motoport its agent (Doc. 25, p. 2, ¶ 13) would transform all authorized dealers into manufacturer's agents and effectively eradicate Florida's privity requirement with respect to vehicle dealers and manufacturers.  That is not the law, and there is no basis for such an assertion. *See id*.

Instead, "Agency is a legal relationship created by an express or implied agreement or by operation of law whereby the agent is authorized to act for the principal."  *Id*.  To establish an

65647636;1

agency relationship, Plaintiff must demonstrate that Yamaha acknowledged that Motoport was acting as its agent; acceptance of the agency by Motoport, and control by Yamaha over Motoport's daily activities during the agency. *Id.* Tell-tale signs of an agency relationship include "the ability of the principal to hire, fire, or supervise dealership employees or dealer ownership." *Id.* Motoport is not Yamaha's agent, and its contract with Yamaha expressly provides that it is not. SMF, ¶¶ 2-3. Moreover, the Limited Warranty also provides that no oral or written information or advance given by its dealers shall create a warranty by Yamaha or in any way increase the scope of the Limited Warranty. SMF, ¶ 11. Because Plaintiff cannot demonstrate any breach of the implied warranty or any privity between Plaintiff and Yamaha, Plaintiff's cause of action for breach of implied warranty fails and summary judgment on Counts II and IV is warranted.

### III.     Plaintiff Has No Available Remedies Under Counts I, II, III, and IV.

Even if Plaintiff could establish claims for breach of an express warranty (Counts I and III) or breach of the implied warranty of merchantability (Counts III and IV), Plaintiff has no available remedies under the warranty or under the Florida Uniform Commercial Code ("UCC"). Plaintiff's Amended Complaint seeks to revoke acceptance of the vessel and seeks to recover actual damages for diminution in value, as well as incidental and consequential damages. In her Rule 26(a)(1) Disclosures, Plaintiff computes her damages to be $250,000.00, consisting of "all costs to repair and maintain the Vessel, hire attorneys, and file this lawsuit, plus interest, and if allowable, all other ancillary or special damages." Doc. 23, p. 4. Despite her disclosure, the boat was fully repaired at Yamaha's expense (not Plaintiff's), and fees and costs incurred in litigation are not considered damages, though they may be recovered in ancillary proceedings if authorized by law or contract. Plaintiff has no available remedies or actionable damages as Plaintiff's remedies are limited to the repair or replacement of the vessel, and the vessel has been fully repaired making

65647636;1

the remedy of replacement unnecessary and unavailable under the circumstances.  Also, the vessel has no diminution of value, and Plaintiff has not identified any incidental or consequential damages, and such damages were properly excluded as a remedy by the Limited Warranty in any event.  Finally, Plaintiff is not entitled to revocation.

> ### a.      Plaintiff's Remedies are Limited to Repair or Replacement of the Vessel.

"Under Florida law, a written warranty is treated as a contract between buyer and seller, and therefore may, by its terms, limit the remedies available.  *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1324–25 (S.D. Fla. 2009) (internal citation omitted), *citing Brennan v. Dow Chem. Co.,* 613 So. 2d 131, 132 (Fla. 3d DCA 1993); *see also Justice v. Rheem Mfg. Co.*, 2014 WL 12845414, at *4 (S.D. Fla. Aug. 22, 2014) (same), *Council Bros., Inc. v. Ray Burner Co.,* 473 F.2d 400, 406 (5th Cir. 1973) (written warranty may limit remedies).

Moreover, F.S. § 672.316(4), expressly authorizes a limitation on damages and remedies: "[r]emedies for breach of warranty can be limited in accordance with the provisions of this chapter on liquidation or limitation of damages and on contractual modification of remedy".  In turn, F.S. § 672.719(1)(a) authorizes a warrantor to "limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts."  Furthermore, F.S. § 672.719 authorizes the exclusion of consequential damages unless the exclusion is unconscionable, which Plaintiff has not asserted and is unsupported.

Here, Yamaha's Limited Warranty expressly limits Yamaha's liability to repairing or replacing the vessel and expressly disclaims incidental and consequential damages and loss of use in all caps:

> **THIS WARRANTY DOES NOT COVER ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING LOSS OF USE, LOSS OF TIME, AND INCONVENIENCE. YAMAHA'S**

**LIABILITY IS LIMITED TO REPAIRING OR REPLACING THE YAMAHA BOAT AS PROVIDED IN THIS WARRANTY.**

Limitations and exclusions of damages clauses, such as the above, have been repeatedly held to be valid and effective. *Aprigliano v. Am. Honda Motor Co., Inc.,* 979 F. Supp. 2d 1331, 1339–40 (S.D. Fla. 2013) (J. Altonaga) ("the terms of an express warranty may limit or foreclose the remedies available to the buyer."). *Smith*, 2020 WL 2105073 at * 11 (holding Florida law and Magnuson-Moss allow exclusion of incidental and consequential damages); *Bluewater Trading LLC v. Fountaine Pajot, S.A.*, 2008 WL 895705, at *5–6 (S.D. Fla. Apr. 2, 2008) (holding that the UCC allows a party to exclude incidental and consequential damages). Accordingly, Plaintiff's remedies for breach of Limited Warranty are limited to repairing or replacing the vessel. And, since the vessel has been repaired, there is no basis to resort to the alternative remedy of replacing the vessel.

> **b.**   **Plaintiff's Claim that the Warranty has Failed of its Essential Purpose is Unsupported.**

Plaintiff has alleged, without factual support, that Yamaha's Limited Warranty has failed of its essential purposes. Under Florida law and the UCC, where a warranty has failed of its essential purpose, a buyer may resort to other UCC remedies: "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in th[e UCC]." F.S. § 672.719 (2). In addressing this section, the UCC comment provides that "where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article." § 672.719, Fla. Stat. Ann., U.C.C. Comment 1.

It cannot be reasonably argued that the Limited Warranty at issue has failed of its essential purpose. First, Yamaha has complied with the Limited Warranty and has repaired the alleged

9

65647636;1

defect.  Second, if Yamaha had not been able to repair the defect in the vessel, the Limited Warranty would then require Yamaha to replace the vessel, i.e. "Yamaha's liability is limited to repairing **or replacing** the Yamaha boat as provided in this warranty" (e.s.).  In other words, even if Yamaha had been unable to repair the boat (not the case), Plaintiff would still have the ability to compel Yamaha to replace the vessel under the Limited Warranty.  There is no reasonable contention that the remedy of replacing the entire vessel has failed or would be insufficient to correct any non-conformity or would operate to deprive Plaintiff of the value of her bargain.  Where the vessel has been repaired and the alternative remedy of replacement remained available, it cannot be argued that the Limited Warranty failed of its essential purpose within the meaning of F.S. § 672.719.

It should be noted that some courts have held that a warranty that is limited "to the repair and replacement of defective **parts** … fails of its essential purpose if the warrantor does not successfully repair defects within a reasonable amount of time or within a reasonable number of attempts." *See e.g. Johnson v. Thor Motor Coach, Inc.*, 2016 WL 8939134, at \*3–4 (M.D. Fla. Aug. 1, 2016) (e.s); *see also Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d 1036, 1043 (N.D. Ga. 2004), *aff'd*, 168 Fed. Appx. 893 (11th Cir. 2006) ("a warrantor is permitted to limit the remedies under a warranty to the repair or replacement of defective **parts**"); *Parsons v. Motor Homes of Am., Inc.*, 465 So. 2d 1285, 1291, 92 (Fla. 1st DCA 1985) (where Winnebago  warranty was "limited to the repair or replacement of parts, at Winnebego's option, of defective **parts**," and the vehicle was unable to be repaired after repeated attempts, the buyer may resort to other UCC remedies).  However, these cases are concerned with warranties that are limited to the repair and replacement of **parts**, not warranties that provide for replacement of a vessel or vehicle, such as Yamaha's Limited Warranty.

65647636;1

These cases make perfect sense in the case of a remedy limited to repair or replacement of parts. Absent the failure of essential purpose UCC provision, a court would be limited to directing the warrantor to continue to repair and replace parts, which would be untenable for a vehicle that could not be repaired. As the court noted in *Orange Motors of Coral Gables, Inc. v. Dade Cnty. Dairies, Inc.*, 258 So. 2d 319, 320–21 (Fla. 3d DCA 1972), "[a]t some point in time, if major problems continue to plague the automobile, it must become obvious to all people that a particular vehicle simply cannot be repaired or parts replaced so that the same is made free of defect." *See also Riley v. Ford Motor Co.*, 442 F.2d 670, 673 (5th Cir. 1971) (same). This reasoning does not extend to a warranty that requires replacement of the vessel.

### c. Even if the Warranty Failed of its Essential Purpose, Plaintiff has not Identified any Cognizable Damages.

As discussed above, the Limited Warranty has not failed of its essential purpose, and Plaintiff's remedy is limited to the repair or replacement of the vessel. Assuming for the sake of argument that the Limited Warranty failed of its essential purpose (it did not), Plaintiff still has not identified any recoverable damages. In that regard, Rule 26(a)(iv) requires each party to provide

> a computation of **each** category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

(e.s.); *see also Carter v. BPCL Mgmt., LLC*, 19-60887-CIV, 2021 WL 7502558, at *2 (S.D. Fla. May 10, 2021) ("plaintiffs must provide a computation of **each** category of damages") (e.s.). Additionally, Fed. R. Civ. P. 26 (a)(1)(A)(ii) requires each party to describe by category documents and things that a party may use to support its claims or defenses. Plaintiff's Initial Disclosures did

11

65647636;1

not identify any categories of documents in support of Plaintiff's damages.  SMF, ¶ 31.  Plaintiff

however identified her purported damages as follows:

> Plaintiff alleges that the damages suffered in this case equal approximately a sum of $250,000.00.  Plaintiff's computation of damages was reached by adding together all costs to repair and maintain the Vessel, hire attorneys, and file this lawsuit, plus interest and, if allowable, all other ancillary or special damages.

SMF, ¶ 30.  Plaintiff's identified damages are either contrary to reality or not recoverable.  While

Plaintiff's disclosures seek damages based on the costs to repair and maintain the vessel, it is

indisputable that the boat was repaired by Yamaha at no cost to the Plaintiff.   And, any

maintenance costs are not attributable to any defects in the boat but are instead attributable to the

fact that Plaintiff owns a boat, i.e. not recoverable.  Furthermore, no maintenance was due on the

boat and any maintenance performed was voluntarily undertaken by Plaintiff and not attributable

to Yamaha.  Finally, the attorneys' fees and court costs identified are not considered damages,

though they may be recovered in ancillary proceedings if authorized by statute or contract.

### d.  Even if the Warranty Failed of its Essential Purpose, Plaintiff has no Claim for Diminution of Value.

Plaintiff seeks diminution of value damages in Counts III and IV of her Amended

Complaint.  Doc. 25, p. 6, ¶¶ 52, 60, p. 7, ¶ 64.  Yamaha assumes for summary judgment purposes

that Plaintiff also seeks such damages with respect to Count II, though no specific damages were

pled.  However, because the vessel was repaired and any non-conformity corrected, there are no

direct or incidental damages. *Smith v. Forest River, Inc.*, 2020 WL 2105073, at *2 (S.D. Fla. Apr.

16, 2020).

In Florida, "[a] buyer's remedy for breach of warranty is typically the difference between

the goods as warranted and the goods as accepted."  *Id*. at * 8; *see, also* F.S. § 672.714 (2) ("[t]he

measure of damages for breach of warranty is the difference at the time and place of acceptance

between the value of the goods accepted and the value they would have had if they had been as warranted"). Damages may also be measured by "the reasonable cost of remedying the breach by making the work performed or article furnished conform to the contract." *Id*. This exact issue was addressed in *Smith*, and the court determined that once a product is repaired, it does not suffer from any diminished value. *Smith*, 2020 WL 2105073 at 8. Here, the vessel conforms to the Limited Warranty, and Plaintiff did not incur any cost to repair the vessel. Like the RV in *Smith*, once the vessel was repaired, it "did not suffer from any diminished value." *Id*. at 8. Because Plaintiff has no damages, summary judgment is appropriate on Plaintiff's claim for diminution of value.

       **e.      Even if the Warranty Failed of its Essential Purpose, Plaintiff has no Claim for Consequential Damages.**

Counts III and IV of Plaintiff's Amended Complaint seek incidental and consequential damages. Doc. 25, p. 6, ¶ 55, p. 7, ¶ 65.[3] Again, Yamaha assumes for summary judgment purposes that Plaintiff also seeks such damages with respect to Count II, though no specific damages were pled. Plaintiff also seeks incidental damages in Count I. Doc. 25, p. 4, ¶ 29. However, Yamaha's Limited Warranty provides that "Yamaha Boat owner shall be responsible for all transportation, haulouts, loss of time, inconvenience, travel expense, loss of use, launch, towing, storage and other expenses incurred in returning the Yamaha Boat for warranty service." As discussed above, Yamaha's Limited Warranty also validly disclaimed incidental and consequential damages and loss of use in all caps. Regardless, Plaintiff did not identify any incidental or consequential

---

[3] The wherefore clause in her Amended Complaint also seeks incidental and consequential damages including "the diminution in value of their motors and boats" (Doc. 25, p. 10, ¶ 2) and "the costs associated with removing the defective motors, purchasing conforming motors and all other damages allowable under law" (Doc. 25, p. 10, ¶ 3). However, as noted above, diminution in value is a direct damage, not an incidental or consequential damage; there is no diminution in value because the vessel has been repaired and returned to the Plaintiff in conformity with the warranty; the motor is not, and has never been, defective; and, all repair costs were paid by Yamaha.

13

65647636;1

damages in her initial disclosures. And since at the time of the disclosures, Plaintiff's boat had already been repaired and back in her possession, any purported damages were within Plaintiff's knowledge at the time of the disclosure. Accordingly, Yamaha is entitled to summary judgment on Plaintiff's claim for incidental and consequential damages in Counts II, III, and IV and incidental damages in Count I.

**f.       Even if the Warranty Failed of its Essential Purpose, Plaintiff is not Entitled to Revocation.**

Plaintiff seeks revocation or rescission in Counts I and IV of her Amended Complaint. Revocation is not an authorized remedy under the Limited Warranty. Doc. 25, p. 4, ¶ 29, p. 7, ¶ 63. While Magnuson-Moss requires a full warranty to authorize revocation and refund as a remedy pursuant to 15 U.S.C. 2304, that requirement does not extend to limited warranties, such as the Limited Warranty at issue. *McKissic v. Country Coach, Inc.*, 2008 WL 2782678, at *6 (M.D. Fla. July 16, 2008) (a Limited Warranty is not required comply with the Magnuson-Moss substantive remedy provisions set forth in 15 U.S.C. 2304). Furthermore, as discussed above, Yamaha's liability under its Limited Warranty is expressly limited to repairing or replacing the vessel.

Regardless, revocation is only authorized under Florida law if a non-conformity exists on the vessel that substantially impairs its value. In that regard, F.S. § 672.608(1) provides that "[t]he buyer may revoke her or his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to her or him." Given no non-conformity currently exists on the vessel, revocation is not an available remedy. Nor can it be said that the value of the vessel has been substantially impaired. *See Smith*, 2020 WL 2105073 at * 8 (a vessel that has been repaired to conform with the warranty does not suffer from diminished value). Accordingly, the remedy of revocation is not available under the Limited Warranty or the UCC.

65647636;1

**IV.** **Plaintiff Does Not State and Cannot Demonstrate a Claim for Unjust Enrichment.**

Yamaha is also entitled to summary judgment on Plaintiff's claim for unjust enrichment. The elements of unjust enrichment are "(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit, and (3) acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof." *Justice v. Rheem Mfg. Co.*, 14-80017-CIV, 2014 WL 12845414, at \*4– 5 (S.D. Fla. Aug. 22, 2014); *see also Nautica Int'l, Inc. v. Intermarine USA, LP.*, 5 F. Supp. 2d 1333, 1341–42 (S.D.Fla.1998) (same). Plaintiff's complaint alleges that Yamaha had knowledge of a defect and appreciated, accepted and retained benefits conferred by Plaintiff despite Yamaha's knowledge of the defect. The cause of action asserted is non-sensical. Plaintiff has not provided any service, item, or benefit to Yamaha, and Yamaha has not accepted or retained any benefit from Plaintiff. And, whether or not a defect existed in the vessel has nothing to do with a claim for unjust enrichment.

Regardless, under Florida law, the existence of the Limited Warranty precludes a claim for unjust enrichment. *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1324–25 (S.D. Fla. 2009). In *David*, the court noted that "[t]he basis of Plaintiff's unjust enrichment claim is the alleged defect in the frame of the motorcycle, which is also the basis of Plaintiff's breach of express warranty claim." *Id.* at 1324. The court in *David* then determined that "unjust enrichment claim arises out of Defendants' alleged failure to perform under the warranty, and the damages pled under unjust enrichment are not distinct from those pled under express warranty." *Id.* The *David* court held that because Plaintiff had an available contractual remedy via its breach of express warranty claim, the unjust enrichment claim was barred. *Id.* Accordingly, Yamaha is entitled to summary judgment on Plaintiff's unjust enrichment claim. *Id.*; *see also Zarrella v. Pac. Life Ins. Co.*, 755

15

F. Supp. 2d 1218, 1227 (S.D. Fla. 2010) ("an unjust enrichment claim can only be pled in the alternative if one or more parties contest the existence of an express contract governing the subject of the dispute"); *Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013) ("unjust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid").

      **V.**       **Plaintiff Cannot State or Demonstrate a Claim Under FDUTPA and has no Actionable Damages or Other Remedy Under FDUTPA.**

Plaintiff fails to allege a claim for damages under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." F.S. § 501.202(2). FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" F.S. § 501.204(1). A deceptive practice is one that is likely to mislead consumers while an unfair practice is one that offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).

A private cause of action exists for any person aggrieved by violation of the Act. *See* § 501.211, Fla. Stat. "[A] consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). Plaintiff's claim is based on assertions that Yamaha disclaimed implied warranties, that Yamaha's warranties are useless, that Plaintiff overpaid for the vessel, and that Yamaha failed to disclose information regarding its "motors' propensity for rapid and premature failure in order to ensure that consumers would purchase its motors and to induce

16

consumers to enter into a transaction." Plaintiff has no evidence to support these claims, which are contrary to the indisputable facts.[4]

The complaint that Yamaha's Limited Warranty is useless is belied by the fact that the vessel was repaired under Limited Warranty, and absent repair, would have required that Yamaha replace the vessel – that Plaintiff is not able to extract additional remuneration from Yamaha pursuant to the Yamaha Limited Warranty does not render the remedies or warranties available useless – a warrantor is not required to provide a full warranty. Furthermore, there were never any issues with the vessel's motor. Plaintiff's complaint regarding the motor is fiction. Additionally, the assertion that Plaintiff overpaid for the vessel is grounds for a FDUTPA claim is absurd. Such a construction would transform every purchase and sale transaction into a potential FDUTPA claim. Regardless, Yamaha was not present, or even involved, in the negotiations for the purchase and sale transaction.

Finally, Plaintiff's complaint that Yamaha disclaimed implied warranties should be summarily disregarded as legally immaterial since Plaintiff was not in privity with Yamaha and has no claim for a breach of implied warranty. "To state a cause of action under the [F]DUTPA, the consumer must allege sufficient facts to show that the consumer has been actually aggrieved by the unfair or deceptive act committed by the seller in the course of trade or commerce." *See Shibata v. Lim*, 133 F. Supp. 2d 1311, 1317 (M.D. Fla. 2000). FDUTPA "is intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer." *Rodriguez v. Recovery Performance & Marine, LLC,* 38

---

[4] Plaintiff's Amended Complaint also improperly recites allegations derived from "stories" found in the internet rumor mill. Doc. 25, pp. 8-9, ¶ 80. The allegations are based on obviously inadmissible and wholly irrelevant hearsay. The "stories" are not even related to boats, much less the same type of boat that Plaintiff has. These allegations are beyond the pale.

17

So. 3d 178, 180 (Fla. 3d DCA 2010). There can be no claim that Plaintiff was harmed by a disclaimer of implied warranties where Plaintiff has no legal claim for implied warranties.

Furthermore, actual damages are a necessary element of Plaintiff's FDUTPA claim. *See Hanson Hams, Inc., LLC*, 2004 WL 5470401 (S.D. Fla. 2004)." The measure of actual damages under FDUTPA is diminution of value. *Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004). "[U]nder FDUTPA, the term 'actual damages' does not include special or consequential damages." *Rodriguez,* 38 So. 3d at 180. It cannot be said that there is a diminution in value, as the purported issues with the vessel were completely resolved. To the extent Plaintiff seeks to recover special or consequential damages under FDUTPA, those damages are not recoverable. *See id*. And, although Plaintiff mischaracterizes attorneys' fees as direct damages, it is blackletter law that they are not.

To the extent that Plaintiff is seeking declaratory or injunctive relief under FDUTPA, such relief is limited to anyone aggrieved by a violation of FDUTPA:

> Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

F.S. § 501.211. As discussed above, Plaintiff cannot show a violation of FDUTPA. Plaintiff also cannot show that any purported violation caused Plaintiff to be aggrieved. An aggrieved person "must be able to demonstrate some specific past, present, or future grievance, otherwise the statute would have no meaning in violation of settled rules of statutory construction." *Ahearn v. Mayo Clinic*, 180 So. 3d 165, 173 (Fla. 1st DCA 2015). Plaintiff has not alleged that she was aggrieved by any practice and cannot demonstrate any aggrievement in any event.

18

65647636;1

## CONCLUSION

Yamaha is entitled to summary judgment as a matter of law on Plaintiff's Amended Complaint in its entirety.  Plaintiff cannot demonstrate that any warranty was breached, that any remedy remains available to Plaintiff, that Plaintiff sustained any actionable damages, or that Plaintiff can support a viable cause of action that should be allowed to go forward.

DATED:   August 15, 2022

Respectfully submitted,

AKERMAN, LLP

*s/ John F. Loar*
JOHN F. LOAR
FBN 110386
john.loar@akerman.com
terri.jay@akerman.com
201 E. Park Avenue, Suite 300
Tallahassee, Florida 32301
Tel: 850-425-1624
Fax: 850-325-2505
*Attorneys for Yamaha*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 15, 2022, a true copy of the foregoing has been served by e-service through the CM/ECF to all Counsel of Record including:

Ryan Clancy, Esq.
Ainsworth + Clancy, PLLC
801 Brickell Ave., 8th Floor
Miami, FL 33131

*s/ John F. Loar*
ATTORNEY

19

65647636;1